**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ALI MOSHTAGH DEZFOULI, *et al.*,

                    Plaintiffs,

      v.

THOMAS J. BARRACK[1], in his official capacity
as U.S. Ambassador to Turkey, *et al.*,

                    Defendants.

Case No. 23-cv-1834 (JMC)

---

**MEMORANDUM OPINION**

Plaintiffs are a group of Iranian citizens seeking nonimmigrant visas to temporarily work, study, or live in the United States.[2] ECF 1. Plaintiffs contend that their applications have been stuck in post-interview administrative processing and thus are unreasonably delayed in violation of the Administrative Procedure Act (APA). Plaintiffs also argue that Defendants' pattern or practice of adjudicating Iranian visa applications is arbitrary, capricious, and not in accordance with law. They bring this suit against Secretary of State Marco Rubio, the U.S. Ambassador to Turkey, and the U.S. Ambassador to Armenia, seeking to compel action on their visas. Defendants have moved to dismiss Plaintiffs' claims on various grounds. ECF 6. While the Court does not find all of Defendants' arguments for dismissal persuasive, it does agree that Plaintiffs have failed

---

[1] The current U.S. Ambassador to Turkey Thomas J. Barrack, the Charge d'Affaires of the U.S. Embassy in Armenia David Allen, and Secretary of State Marco Rubio are substituted as defendants in this case pursuant to Federal Rule of Civil Procedure 25(d).

[2] Plaintiffs are Ali Moshtagh Dezfouli, Alireza Moradimasjedbari, Hamed Fathi, Hossein Izadpanah, Mohsen Rezaei, Morteza Rabiei, Seyediman Mirafzal, Shirin Yousefi, Vahid Mohagheghi, Soheil Rasoolzadegan, and Tina Entezari. ECF 1 ¶¶ 8–20. Former plaintiffs Hamidreza Hekmatjouis and Majid Amini have voluntarily dismissed their suits as moot because Defendants issued final decisions on their visa applications. ECF 8 at 1.

1

to state plausible APA claims on the merits. Accordingly, the Court will **GRANT** Defendants' motion to dismiss.[3]

## I.    BACKGROUND

Plaintiffs are citizens of Iran who have applied for nonimmigrant F-1, F-2, J-1, or J-2 visas, seeking temporary admission to the United States. ECF 1 ¶ 62. J-1 visas are nonimmigrant visas for "exchange visitor[s]" that "allow[] . . . foreign citizens to travel to the United States to teach or study," and their spouses and children can apply for derivative J-2 visas. *Id.* ¶¶ 40, 45. "An F-1 visa provides foreign national students valid immigration status for the duration of a full course of study at an approved academic institution in the United States," and their spouses and children can apply for derivative F-2 visas. *Id.* ¶¶ 46, 49.

Applicants for nonimmigrant visas must be interviewed by a consular officer. 8 U.S.C. § 1202(h); 22 C.F.R. § 41.102. Plaintiffs attended consular interviews between February 4, 2022, and January 4, 2023.[4] ECF 1 ¶ 63. After a visa application has been "properly completed and executed," consular officers are required to either "issue" or "refuse" the visa. 22 C.F.R. § 41.121(a); 8 U.S.C. § 1202(d) ("All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."). If a consular officer determines that there is not sufficient information to establish visa eligibility, the officer may provisionally "refuse" the visa pending further administrative processing under Section 221(g) of the Immigration and Nationality Act (INA), which typically consists of additional information-gathering. 8 U.S.C. § 1201(g); U.S.

---

[3] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

[4] The earliest alleged interview date in the complaint is November 3, 2021, but the plaintiff interviewed on that date has since dismissed his case because he received his visa. ECF 1 ¶ 11; ECF 8. The second-earliest interview appears to have occurred on February 4, 2022. ECF 1 ¶ 17.

Dep't of State, *Administrative Processing Information,* https://perma.cc/R88M-J2XC. Each Plaintiff was informed that "additional processing was necessary before the visa could be issued" pursuant to Section 221(g) and each "responded to all requests for information." ECF 1 ¶¶ 64–65. Plaintiffs' visas have remained in administrative processing and they have received no further updates on the status of their applications. *Id.* ¶¶ 66–70.

As citizens of Iran, Plaintiffs are also subject to an additional hurdle. After the September 11 terrorist attacks, Congress imposed new restrictions on the issuance of nonimmigrant visas to citizens from a country that has been designated a state sponsor of terrorism. Citizens of those countries may only be issued visas if the "Secretary of State determines . . . that [they do] not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a). Iran has been designated a state sponsor of terrorism since 1984. U.S. Dep't of State, *State Sponsors of Terrorism*, https://perma.cc/Q9AE-CER6.

## II.     LEGAL STANDARD

The Court resolves the pending motion under Rule 12(b)(6). Under that rule, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making that determination, the Court relies on the complaint itself, which may include "documents attached as exhibits or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). The Court must "treat the complaint's factual allegations as true" and afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

## III.    ANALYSIS

Defendants move to dismiss on several threshold grounds, arguing that (1) Plaintiffs lack standing, (2) Plaintiffs' claims are precluded by the doctrine of consular nonreviewability, (3) Plaintiffs' claims present non-justiciable questions, and (4) there is no remaining non-discretionary agency action that Defendants are required to take. The Court finds that none of these threshold issues warrant dismissal. Under case law in this district, it is well-established that Plaintiffs have standing and claims like Plaintiffs' are routinely resolved in federal court. The consular nonreviewability doctrine does not apply here because Plaintiffs' claims are based on Defendants' failure to render a decision on their applications. Plaintiffs do not seek judicial review of any consular officer's final determination. Plaintiffs can also bring this suit to compel a final decision on their applications that are stuck in administrative processing because issuing decisions on the pending visa applications is a discrete agency action required by law.

Having resolved those issues in Plaintiffs' favor, the Court turns to Defendants' bases for dismissal on the merits. Defendants argue that Plaintiffs have not plausibly alleged that any delay is unreasonable or that any pattern or practice of evaluating Iranian visa applications is arbitrary or capricious. The Court agrees with Defendants that both claims fail. A delay of 16 months—from the date when the first Plaintiff interviewed to the filing of their complaint—is not unreasonable. Even evaluating a delay of about four years—measuring from the first interview to the present day—is not per se unreasonable. Further, the Court cannot practicably grant Plaintiffs' request for relief without reordering the queue for immigration adjudications and placing their applications ahead of others who are also awaiting action on their visa applications. That type of reshuffling of agency priorities is not the proper role of the Court. Plaintiffs have also failed to allege that any distinctions Defendants have drawn on the basis of national origin are arbitrary.

Accordingly, the Court finds that Plaintiffs have failed to state claims for unreasonable delay and for arbitrary and capricious action, and grants Defendants' motion to dismiss under Rule 12(b)(6).[5]

### A. Threshold Issues

#### 1. Standing

As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). To do so, Plaintiffs "must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant[s]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Defendants argue that Plaintiffs have suffered no injury because a procedural injury is insufficient to confer standing unless "tethered to some concrete interest," and as "unadmitted, nonresident[] noncitizens," Plaintiffs have no cognizable interest in gaining entry to the United States. ECF 6 at 22–24. Defendants also argue that any injury asserted is not redressable because, as citizens of Iran, 8 U.S.C. § 1735 dictates that their visa applications must be refused absent a national security determination by the Secretary of State. *Id.* at 27.

Courts in this district have routinely rejected these standing arguments in similar visa cases. *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *3–4 (D.D.C. Sept. 18, 2023) (collecting cases). The Court agrees with this persuasive authority. Plaintiffs have alleged an injury in fact because they have a "procedural right to reasonably expeditious agency action that is tethered to their concrete professional and financial interest[s] in earning . . . advanced degree[s]," participating in programs as exchange scholars, or from their derivative interests of being in the

---

[5] The Parties have agreed that the Court may resolve Defendants' motion to dismiss without requiring Defendants to file a certified list of the contents of the administrative record, as usually required by Local Civil Rule 7(n). ECF 6 at 55 n.5; ECF 9 at 35 n.4.

United States with a family member engaged in those pursuits. *Id.* at 4. The absence of a final decision on their applications has "caused family separation, stress, and anxiety." ECF 1 ¶ 89; *see Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 96 (D.D.C. 2024) (finding that "anxiety, frustration, and the expenditure of time and precious financial resources" constituted injuries-in-fact). Those injuries are redressable because, "[w]hile the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications within a reasonable time." *Khazaei*, 2023 WL 6065095, at \*4.

Defendants also argue that section 1735 precludes redressability because the statute requires the State Department to refuse nonimmigrant visas for Iranian nationals unless a specific determination is made that they do not "pose a threat to the safety or national security of the United States." ECF 6 at 27 (quoting 8 U.S.C. § 1735(a)). But this argument assumes that Plaintiffs seek "re-adjudication" of applications that have already received a section 1735 determination. *See id.* In contrast, Plaintiffs "have pled that their applications are still pending administrative processing" and "may be redressed with an order to complete that review more expeditiously," including making a determination under that provision. *Khazaei*, 2023 WL 6065095, at \*4 (noting that Defendants' argument about section 1735 "assume[d] that redress could come only in the form of re-adjudicating applications that have already" received a section 1735 determination but plaintiffs had in fact pled that "review of their applications is not complete"). Accordingly, the Court finds that Plaintiffs have standing to bring this suit.

### 2. *Consular Nonreviewability*

The Court next turns to the doctrine of consular nonreviewability. ECF 6 at 41. The doctrine of consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).

Because decisions regarding the admission and exclusion of noncitizens "may implicate relations with foreign powers [and] involve classifications defined in the light of changing political and economic circumstances," such assessments "are frequently of a character more appropriate to either the Legislature or the Executive." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Mathews v. Diaz*, 426 U.S. 67, 81 (1976)).

That doctrine, however, does not apply where plaintiffs "do not seek judicial review of a consular decision, but instead seek a final decision on their applications." *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-cv-01388, 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019). And that is what Plaintiffs seek here. Plaintiffs are not asking the Court to pass judgment on any reason a consular officer may have for refusing their applications—they just want the Court to order Defendants to make a decision. That logic applies despite the nominal "refusal" that Plaintiffs allege happened before the current administrative processing stage began. *See* ECF 1 ¶¶ 64–65, 66–70 (alleging that each Plaintiff was informed that "additional processing was necessary before the[ir] visa could be issued" and that their applications have remained in administrative processing without update). Indeed, "a long line of decisions" from courts in this district have concluded that the doctrine does *not* prohibit judicial review in cases analogous to this one because consular nonreviewability "applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (collecting cases).

Pointing to an unpublished D.C. Circuit opinion in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) as supplemental authority, Defendants argue that a consular officer's initial refusal of a visa application is a final decision that this Court cannot

review, even if Plaintiffs allege that their applications remain under consideration in subsequent administrative processing. ECF 13 at 1–2. In *Karimova*, the D.C. Circuit determined that the visa applicant before it could not compel a consular officer to take further action on her application, which had been refused, because her matter had "already . . . concluded." *Karimova*, 2024 WL 3517852, at *4. The Court disagrees with Defendants' position. First, the Court observes that *Karimova* is not binding on it. *See id.* at *6 (noting that "this disposition will not be published"); Order, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sept. 10, 2024), Doc. No. 2074062, at 1 (denying the government's motion to publish). Under the D.C. Circuit's rules, the panel's decision not to publish its opinion means "that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2); *see also Aramnahad v. Rubio*, No. 24-cv-1817, 2025 WL 973483, at *7 (Mar. 31, 2025) ("This Court agrees . . . that *Karimova*, as an unpublished opinion, is not binding.") (collecting cases). So *Karimova* does not compel the Court to find that the doctrine of consular nonreviewability applies here.

Second, the Court has already been persuaded by the reasoning of other courts in this district—even after *Karimova*—holding that the doctrine of consular nonreviewability does not bar review where plaintiffs sufficiently allege that their applications have not reached final adjudication, such as when they have been placed in administrative processing after a consular interview. *Asghari v. Rubio*, No. 25-cv-1666, 2026 WL 890411, at *3 (D.D.C. Mar. 31, 2026); *Tehran v. Rubio*, No. 25-cv-1584, 2025 WL 3551629, at *3 (D.D.C. Dec. 11, 2025); *see also Shushkov v. Rubio*, No. 24-cv-2265, 2025 WL 2389939, at *4 (D.D.C. Aug. 18, 2025); *Alsaraj v. U.S. Dep't of State*, No. 24-cv-3399, 2025 WL 2732704, at *5 (D.D.C. Sept. 25, 2025); *Tolymbekova v. Rubio*, No. 25-cv-295, 2025 WL 2576312, at *4–5 (D.D.C. Sept. 5, 2025); *Mehrpooya v. Allen*, No. 24-cv-2340, 2025 WL 2549279, at *5 (D.D.C. Sept. 4, 2025);

8

*Aramnahad*, 2025 WL 973483, at \*8 ("[T]he court's conclusion in *Karimova* that refusing an application and placing it in administrative processing is a 'final' decision does not square with the facts Plaintiffs have alleged . . . [and] the officer's decision to place Plaintiffs' application in administrative processing is not equivalent to rendering a final decision.").

Because the Court "must focus on what is actually happening," and not allow Defendants to "elevate form over substance to avoid review," the Court considers the facts Plaintiffs have alleged to determine whether a final decision has been made on their applications. *Aramnahad*, 2025 WL 973483, at \*8 (quoting *Al-Gharawy*, 617 F. Supp. 3d at 16). After all, at the motion to dismiss stage, the Court is bound to assume the truth of Plaintiffs' material factual allegations and grant Plaintiffs the benefit of all inferences that can be derived from those allegations. *See, e.g., Sparrow*, 216 F.3d at 1113. Plaintiffs allege that Defendants have "refused to decide" their visa applications, ECF 1 ¶ 5, and that the consular officers at their interviews did not question their eligibility but informed them that "additional processing was necessary before the visa could be issued," *id.* ¶ 64. They further plead that they have "only received acknowledgments of their emails [seeking updates] without guidance or responsive information explaining why their visas remain pending," *id.* ¶ 67, and that "[w]ithout a decision," they will "lose their eligibility for admission" at schools and programs in the United States, *id.* ¶ 69. They also allege that the State Department's visa process is currently operating on an "indefinite timetable" that is delaying "final decision[s]" on their applications. *Id.* ¶ 88. Taken together, these facts support the plausibility of Plaintiffs' allegations that their applications remained under consideration at the time of filing and they are awaiting a final decision. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 112 (D.D.C. 2024) ("In other words, the application is still being processed and a decision is still forthcoming. It has only been 'refused' in the far-from-literal sense that it has not yet been 'granted' or 'denied.'").

Because Plaintiffs do not ask the Court to review any consular officer's decision, but instead seek final decisions or a determination that adjudication has been unreasonably delayed, the doctrine of consular nonreviewability does not apply to bar judicial review of Plaintiffs' claims.

### 3.  *Non-Justiciability*

Next, Defendants adopt the position that because decisions "relating to the exclusion of noncitizens abroad" are "fundamental act[s] of sovereignty" controlled by the political branches, "courts may not review decisions to exclude noncitizens unless expressly authorized by law." ECF 6 at 34–35. Defendants also argue that any determinations of whether Plaintiffs pose threats to national security under 8 U.S.C. § 1735 are non-justiciable. *Id.* at 36.

Defendants' non-justiciability argument overlaps significantly with their argument on consular nonreviewability, which the Court has already addressed above. *Kahbasi v. Blinken*, No. 23-cv-1667, 2024 WL 3202222, at *5 (D.D.C. June 27, 2024) (describing non-justiciability arguments as "a restatement of [the government's] argument about consular nonreviewability"). Again, Plaintiffs do not seek to alter the judgment of the legislative or executive branch as to whether certain noncitizens should be admitted. Instead, they merely ask for a final decision on their visas. The Court's adjudication of such a request does not intrude on the prerogatives of the political branches in making substantive decisions about who to admit into the country. *See Khazaei*, 2023 WL 6065095, at *4. Plaintiffs are not arguing that Defendants erroneously found them to be threats to national security and then asking the Court to second-guess that determination. The Court agrees it could not do that. Plaintiffs are only asking that Defendants move their applications forward, including conducting the section 1735 inquiry in the first place. *See id.* at *5; *Kahbasi*, 2024 WL 3202222, at *5 (noting that "it is not set in stone that Plaintiffs'

visas will ultimately be refused under [s]ection 1735" and Plaintiffs only seek "final processing of their visa applications").

### 4. *Non-Discretionary Duty to Take Agency Action*

Next, Defendants contend that Plaintiffs have failed to identify "a clear, non-discretionary duty for a consular officer" to take any action necessary to establish a mandamus claim or a claim of agency inaction under APA section 706. ECF 6 at 28. Under the APA, to assert a claim of unreasonable delay, a plaintiff "must first allege that the agency 'failed to take a discrete agency action that it is required to take.'" *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)); *see also* 5 U.S.C. § 555(b) (requiring agencies to take non-discretionary actions within a "reasonable time"); 5 U.S.C. § 706(1) (granting courts the authority to "compel agency action unlawfully withheld or unreasonably delayed").

Plaintiffs argue that Defendants have failed to comply with the statutory mandate that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d); ECF 1 ¶ 28 (citing section 1202(d)'s language).[6] Defendants take the view that a final adjudication already occurred when Plaintiffs' applications were provisionally refused after their interviews and that there is no remaining agency action they are required to take by law. ECF 6 at 30 (arguing that there is no clear duty to "adjudicate any specific visa application, or to re-adjudicate a visa after it has been refused"). Defendants again point to *Karimova*, in which they say the D.C. Circuit found no "clear duty to act on a visa application after a consular officer had refused it." ECF 13 at 2. As discussed above, *Karimova* is not binding authority, so the decision

---

[6] Plaintiffs also point to regulations requiring the adjudication of visa applications after the applicant has been interviewed. 22 C.F.R. § 41.102(a); *id.* § 41.106 (requiring consular officers to ensure that certain nonimmigrant visa applications are "properly and promptly processed in accordance with the applicable regulations and instructions"); *id.* § 41.121(a) (consular officers "must issue" or "refuse" properly completed visa applications).

would at best be persuasive, not dispositive. *See supra* Section III.A.2. The Court has already concluded that Plaintiffs' complaint sufficiently alleges that they are still awaiting a final decision on their visa applications, *id.*, and thereby rejects Defendants' argument that they have complied with their non-discretionary duty to provide a final adjudication, *see Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024) (citing *Khazaei*, 2023 WL 6065095, at *6) (issuing a final decision on a visa application is "plainly a discrete agency action" required by law); *Shushkov*, 2025 WL 2389939, at *6 (collecting cases).

Additionally, in *Karimova*, the plaintiff "rooted the asserted duty to act" in section 555 of the APA, an "ancillary provision stating that 'each agency shall proceed to conclude a matter presented to it' 'with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time.'" *Karimova*, 2024 WL 3517852, at *2–4 (citing 5 U.S.C. § 555(b)). The court in *Karimova* considered whether 5 U.S.C. § 555(b) "and *only* Section 555(b)—places a clear, non-discretionary duty on [a] consular officer" and found that such an ancillary, "non-specific directive" did not. *Id.* at *3. Since *Karimova*, some courts in this district confronting this question have held that a provision of the INA, 8 U.S.C. § 1202(b), confers a non-discretionary duty to adjudicate visa applications placed in post-interview administrative processing. *See, e.g.*, *Thein v. Trump*, No. 25-cv-2369, 2025 WL 2418402, at *11 (D.D.C. Aug. 21, 2025). Because section 1202(b) requires that "[*a*]*ll* immigrant visa applications *shall* be reviewed," courts have found that section of the INA "establishe[s] a specific principle of comprehensive review and adjudication by consular officers." *Id.* Section 1202(d) imposes the same duty for nonimmigrant visas and Defendants' failure to decide *all* nonimmigrant visa applications—including Plaintiffs'—violates a non-discretionary duty imposed by statute. 8 U.S.C. § 1202(d) (requiring that "[a]ll nonimmigrant visa applications shall be reviewed and

12

adjudicated by a consular officer"); *Nikjooy v. Rubio*, 804 F. Supp. 3d 76, 78, 85 (D.D.C. Sept. 12, 2025) (finding that section 1202(d) supports the existence of a nondiscretionary duty to adjudicate a B-1/B-2 visa). Additionally, "[w]ithout clear, binding precedent foreclosing [Plaintiffs'] position that the INA imposes a non-discretionary duty on the government to adjudicate specific visas, the assumption of reviewability permits consideration of the merits" of Plaintiffs' claims. *Mahmoodi v. Altman-Winans*, No. 24-cv-2010, 2025 WL 763754, at *4 (D.D.C. Mar. 11, 2025). Because Plaintiffs have alleged that they have not received a final determination on their applications, there remains a discrete action Defendants are required to take.[7]

**B. Unreasonable Delay Claim**

Turning to the merits of Plaintiffs' first APA claim, Defendants argue that Plaintiffs have failed to state a plausible claim of unreasonable delay. ECF 6 at 45. Plaintiffs argue that a 16-month delay—from the time of the first Plaintiff's consular interview to the time of the complaint—is unwarranted, especially in light of their imminent need to enroll in educational programs. ECF 1 ¶¶ 63, 68–69; *see supra* note 4. But even if the Court extended the period of measuring delay to the present day, a processing time of just over four years is still within the range of what courts have found to be reasonable. *See Da Costa*, 80 F.4th at 339, 342 (affirming district court's dismissal for failure to state a claim, finding that a four-year delay is not unreasonable). Ultimately, the Court agrees with Defendants that Plaintiffs have not sufficiently alleged that Defendants' delay warrants judicial intervention and will dismiss this claim.

The central question in evaluating a claim of unreasonable delay is "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855

---

[7] Because the Court finds that Defendants are under a non-discretionary duty to act, it does not address Defendants' argument that delay alone "can[not] amount to a violation of a clear duty to act for mandamus jurisdiction purposes" under the *TRAC* factors. ECF 6 at 33–34.

13

(D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 79 (D.C. Cir. 1984)). To assess unreasonable delay, courts consider six "TRAC" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (2016) (quoting *TRAC*, 750 F.2d at 80).

The *TRAC* factors are not "ironclad" and each case "must be analyzed according to its own unique circumstances" because each "will present its own slightly different set of factors to consider." *Hajizadeh*, 2024 WL 3638336, at *4 (quoting *Air Line Pilots Ass'n v. Civ. Aeronautics Bd.*, 750 F. 2d 81, 86 (D.C. Cir. 1984)). The first and fourth factors are "most important" in the visa application context. *Da Costa,* 80 F.4th at 340. The Court considers the factors below.

### 5.  *Factors 1 & 2*

The first two factors are typically analyzed together and assess "whether there is any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay." *Hajizadeh*, 2024 WL 3638336, at *4. Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Nevertheless, in the visa application context, courts "often look to the length of delay as a rough yardstick to determine

whether th[e] 'first-in, first-out' rule is, in fact, being applied." *Sivananthan v. Blinken*, No. 23-cv-1181, 2023 WL 4885858, at *3 (D.D.C. Aug. 1, 2023). In this district, the length of delay is usually evaluated from the most recent government action to the date upon which a plaintiff seeks relief in court. *See e.g.*, *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, *7 n.7 (D.D.C. Jan. 30, 2024) ("The proper method for calculating delay, however, is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint . . . . The last action taken on plaintiff's visa application was his consular interview.").

In this case, there was about a 16-month delay from the date of the first Plaintiff's interview to when Plaintiffs filed the complaint. ECF 1 ¶ 63; *see supra* note 4. On its face, that timeline tilts in favor of Defendants. Courts in this jurisdiction have routinely found that similar delays are not unreasonable. *See, e.g.*, *Shabestary v. Sanders*, No. 24-cv-362, 2024 WL 5118229, at *6 (D.D.C. Dec. 16, 2024) (finding a 22-month "delay in processing" was not unreasonable); *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *7 (D.D.C. Feb. 7, 2024) (20 months). And even accounting for the fact that the delay may have continued to the present, extending to a period of over four years, "district courts have generally found that immigration delays . . . between three to five years are often not unreasonable." *Sarlak v. Pompeo*, No. 20-cv-0035, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). The delay here falls within the realm of general reasonableness. *See, e.g.*, *Varghese v. Blinken*, No. 21-cv-2597, 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (finding delay of "around four years" does "not warrant judicial intervention, standing alone"); *Da Costa*, 80 F.4th at 342 (concluding that a four-year delay is not unreasonable). As such, these factors weigh in favor of Defendants.[8]

---

[8] Defendants also argue that Plaintiffs cannot seek to "truncate the time the Executive is using to determine whether Plaintiffs pose a threat to the safety or national security of the United States." ECF 6 at 51. Because the Court has already found that Plaintiffs have failed to show that the delay on their visas is unreasonable, the Court does not

15

Plaintiffs contend that "[i]t is inappropriate to resolve disputed findings regarding the *TRAC* factors without a complete record or discovery . . . because resolution of the factors is a nuanced and fact-specific task." ECF 1 ¶ 79. Plaintiffs also argue that claims of unreasonable delay must account for differences in visa purposes across immigration categories, and that the "time-sensitivity of student and exchange visitor" visas supports a finding that the delay on their applications is unreasonable. ECF 9 at 30–31 ("Claims of unreasonable delay should not rise or fall at the pleading stage as a matter of arithmetic across all visa categories."). But courts in this district routinely assess unreasonable delay claims at the motion to dismiss stage, including for nonimmigrant J-1 and F-1 visas, and the Court finds it appropriate to do so here because it can assess whether the delay is unreasonable as a matter of law—particularly where, as here, the basis for Plaintiffs' claims rests primarily on the length of time their applications have been in processing. *See, e.g.*, *Azarhomayoun v. Blinken*, No. 23-cv-1595, 2025 WL 1591674, at *3 (D.D.C. June 5, 2025) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide."); *Kahbasi*, 2024 WL 3202222, at *6; *Da Costa*, 80 F.4th at 346; *Janay*, 743 F. Supp. 3d at 118; *Motevali v. Rubio*, No. 24-cv-1029, 2025 WL 885116, at *8 (D.D.C. Mar. 21, 2025); *Hajizadeh*, 2024 WL 3638336, at *6; *Sereshti v. Gaudiosi*, No. 24-cv-1288, 2024 WL 4625802, at *11 (D.D.C. Oct. 30, 2024).

Additionally, Plaintiffs point to circumstances that have developed since they filed their complaint—the fact that two former plaintiffs have received visas—as indicating that "there is no rhyme or reason" to Defendants' decision making. ECF 9 at 32–33. Even at the motion to dismiss stage, other courts in this district have found that the mere fact that applications filed around the same time are processed differently does not on its own allow the Court to draw an inference that

___

separately consider whether the amount of time that has elapsed is reasonable because Defendants need to make national security determinations for Iranian nationals.

16

the agency's decision making is unreasonable, as "different visa applications vary in complexity." *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at \*10 (D.D.C. Oct. 23, 2023). "[T]he fact that others were interviewed after but adjudicated before [an applicant] does not, without other information, mean that Defendants are not adhering to the first-in, first-out rule, as different applications may require different time and attention." *Id.* at \*9. Accordingly, Plaintiffs have not sufficiently alleged that the length of the delay or Defendants' process for deciding applications is unreasonable.

### 6.  Factor 4

*TRAC* factor four requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Because granting relief in the context of visa applications would necessarily require "reorder[ing] a queue of applicants seeking adjudication," this factor often weighs strongly in favor of Defendants. *Tate v. Pompeo,* 513 F. Supp. 3d 132, 149–50 (D.D.C. 2021); *see also Akrayi v. U.S. Dep't of State*, No. 22-cv-1289, 2023 WL 2424600, at \*4 (D.D.C. Mar. 9, 2023) ("[P]recedent in this circuit recognizes that expediting review here would merely redirect resources from other cases."); *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay" where "a judicial order putting the petitioner at the head of the queue would simply move all others back."); *Sivananthan*, 2023 WL 4885858 at \*4 (collecting cases).

Plaintiffs argue that "[t]here is no evidence that Defendants would be harmed if ordered to issue decisions" for their specific applications.[9] ECF 9 at 34. But applying this logic, "any

---

[9] In their opposition brief, Plaintiffs state that there are only "three remaining Plaintiffs" but has only informed the Court of the dismissal of two out of the original thirteen. ECF 9 at 34; ECF 8. The Court therefore continues to proceed as if eleven Plaintiffs remain in this case.

individual plaintiff or small group of plaintiffs could prevail on this factor." *Tate*, 513 F. Supp. 3d at 150. "While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Id.* Granting the requested relief would, in fact, require the Court to order Defendants to act on Plaintiffs' applications. That would necessarily compel the agency to prioritize resolution of their applications ahead of others. ECF 6 at 52–53. The Court must be cautious in ordering such relief because deference must be given to the "State Department's priority-setting and resource-allocation decisions" in the visa adjudication context. *Hajizadeh*, 2024 WL 3638336, at *5; *see also Manzoor v. U.S. Citizenship & Immigr. Servs.*, No. 21-cv-2126, 2022 WL 1316427, at *6 (D.D.C. May 3, 2022) ("It makes little sense to incentivize the creation of a queue of visa applicants within the docket of the federal judiciary to determine the order of the queue for visa applications."). Because Plaintiffs' request for relief would require the Court to take charge of the consulate's priority-setting, ordering the agency to redistribute its resources and prioritize their applications, the fourth *TRAC* factor weighs in favor of Defendants.

### 7.  *Factors 3 & 5*

The third and fifth factors concern the impacts of the delay on Plaintiffs and their families. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020) (quoting *TRAC*, 750 F.2d at 80).

Here, Plaintiffs allege that, due to the civil strife in Iran, highly educated individuals are not able to safely express their opinions and must leave the country to pursue their educations. ECF 1 ¶ 90. Additionally, Plaintiffs risk losing out on the opportunities to pursue their educations

18

and the delayed visa processes have caused "family separation, stress, and anxiety." *Id.* ¶ 89. While the Court accepts as true that the delay has been emotionally taxing and does not seek to minimize those harms, Plaintiffs' complaint does not include allegations of impeding threats to human health and wellbeing warranting judicial intervention. *See Hajizadeh*, 2024 WL 3638336, at *6 (finding "severe emotional distress" due to the uncertainty and "a considerable amount of money" spent on visa-related expenses were not harms sufficiently threatening to plaintiff's physical health and wellbeing to justify relief); *see also Da Costa*, 80 F.4th at 345 (concluding that the third and fifth *TRAC* factors did not favor the plaintiffs where they did not, "for example, allege that they are unable to access electricity, water, food, or shelter"). Accordingly, this factor also tilts in favor of Defendants.

### 8. Factor 6

Finally, the sixth factor addresses "whether the agency's bad faith caused the delay." *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Plaintiffs allege that "the disparate treatment of Iranian national students is indicative of bad faith or impropriety." ECF 1 ¶ 92. The Court will explain why it rejects Plaintiffs' conclusory disparate treatment argument below. *See infra* Section III.C. Plaintiffs have not provided another basis for the Court to infer impropriety. The lack of plausible allegations of impropriety, however, does not weigh against Plaintiffs and does not alter the Court's analysis. *See Sivananthan*, 2023 WL 4885858, at *5. This factor is thus neutral.

After weighing the *TRAC* factors, the first and fourth being the strongest in the visa application context, the Court concludes that Plaintiffs have not plausibly alleged that the delay in the administrative processing of their visas is unreasonable. The delays in visa adjudications are undoubtedly frustrating, but the *TRAC* factors do not warrant judicial intervention at this time.

## C. Arbitrary and Capricious Claim

Finally, the Court addresses Plaintiffs' arbitrary and capricious claim based on Defendants' alleged disparate treatment of Iranian applicants. *See* 5 U.S.C. § 706(2)(A) (requiring courts to set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'); ECF 1 ¶¶ 97–98 (alleging that Defendants have a pattern or practice of "disparate treatment o[f] the applications of Iranian students" and that Defendants have "engaged in a pattern or practice of refusing to issue prompt and proper decisions on nonimmigrant visa applications for Iranian nationals"). Plaintiffs also argue that it is arbitrary for Defendants to accept visa applications from Iranians if, in reality, they have adopted a policy to refuse to issue decisions on those visas. ECF 9 at 35 (suggesting that Defendants may have "arbitrarily and capriciously changed" their visa policy for Iranian student applicants "without affording any notice whatsoever"). Defendants, on the other hand, argue that Plaintiffs' arbitrary and capricious claim is unreviewable under section 701 of the APA because it challenges policy decisions "committed to agency discretion." ECF 6 at 38 (citing 5 U.S.C. § 701(a)(2)). Defendants also argue that there is no "meaningful judicial standard" for the Court to apply in assessing this claim. *Id.* at 39–40.

The Court need not decide whether Plaintiffs' claim is reviewable because, even assuming reviewability, Plaintiffs' claim fails on the merits as alleged.[10] Plaintiffs' claim that Defendants unlawfully treat Iranian applicants differently fails to clear the high legal bar needed to challenge

---

[10] Defendants point to 8 U.S.C. § 1104(a) as expressly conferring discretion on the Secretary of State to "create a policy that distinguishes between the nationalities of noncitizens seeking a visa." ECF 6 at 39. And they argue that "Plaintiffs point to no statute that restricts the Secretary's authority to scrutinize certain visa applicants." *Id.* at 38. But Defendants misplace the burden—if they seek to prove that these decisions are committed to agency discretion, they must point to "specific [statutory] language or . . . specific congressional intent" to rebut the presumption of judicial review. *Gutierrez v. Noem*, 811 F. Supp. 3d, 133, 157 (D.D.C. Dec. 5, 2025). While Defendants cite cases explaining why the Secretary is entitled to deference in enforcing immigration schemes, their briefing does not make any arguments about specific language in 8 U.S.C. § 1104(a) that demonstrates Congress's intent that such decisions should be unreviewable under the APA. *See* ECF 6 at 39–40. Accordingly, the Court will "assume without deciding" that Plaintiffs' arbitrary and capricious claim is "reviewable" and address its failure on the merits. *Trump*, 585 U.S. at 682–83.

classifications of nationality in the immigration context. The D.C. Circuit and other courts have long recognized that immigration distinctions based on nationality "must be sustained" "so long as they are not wholly irrational." *Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979) ("Distinctions on the basis of nationality may be drawn in the immigration field by the Congress or the Executive."); *Malek-Marzban v. INS*, 653 F.2d 113, 116 (4th Cir. 1981) ("When the federal government classifies aliens on the basis of nationality, the classification must be sustained if it has a rational basis."). Here, Plaintiffs' arguments about a pattern or practice of disparate treatment are conclusory and lack the factual specificity needed to render such a claim plausible. *See Twombly*, 550 U.S. at 570 (requiring a complaint to allege facts sufficient to "state a claim to relief that is plausible on its face"). Additionally, there is no dispute in this case that Defendants are obligated to treat Iranian nationals differently in some ways because their country is listed as a state sponsor of terrorism. ECF 6 at 40 (noting that Iran is a state sponsor of terrorism and the Secretary of State must make a determination as to whether an individual Iranian national "pose[s] a threat to the safety or national security of the United States" under 8 U.S.C. § 1735(a)). Similarly, Plaintiffs have also failed to plead specific facts supporting their claim that Defendants have, "without affording any notice," changed their visa policies for Iranian student applicants. ECF 9 at 35. Because Defendants identified a statutory scheme that explains why they treat Iranian visa applicants differently from those of other nationalities and because Plaintiffs have failed to allege facts demonstrating any *sub silentio* change in Defendants' visa policies for Iranian student applicants, the Court finds that Defendants' actions are not arbitrary or capricious.

*   *   *

For the foregoing reasons, the Court will dismiss Plaintiffs' claims. The Court notes that the dismissal is without prejudice—if further changes to Plaintiffs' circumstances render the

21

situation fit for judicial resolution, Plaintiffs can re-file their suit. But, at this juncture, Defendants'

motion to dismiss for failure to state a claim, ECF 6, is **GRANTED**, and as a result Plaintiffs'

complaint is **DISMISSED**.

    **SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: May 29, 2026